UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALI SHANEHSAZ, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:16-cv-00952-MJD-LJM ) |
| LEE JOHNSON, | ) ) |
| Defendant. | ) ) |

**ENTRY**

This matter comes before the Court at the intersection of the modern complexities of international relations and the "ancient civil remedy" of replevin.[1] The dispositive issue in this case is this: does the federal regulation prohibiting investments in Iran preclude Plaintiff's action to recover the proceeds from such an investment? The Court concludes that Plaintiff's replevin and trespass claims seek an illegal remedy and thus fail as a matter of law. Accordingly, as expounded below, the Court **GRANTS** Defendant's Motion for Summary Judgment. [Dkt. 58.]

**I. Standard**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is required where the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).

---

[1] *See* Comment, Laprease *and* Fuentes*: Replevin Reconsidered*, 71 Colum. L. Rev. 886, 886 (1971) ("Replevin, the origins of which apparently pre-date the common law, is among the most ancient of civil remedies.").

The Court may not weigh evidence or make credibility determinations on summary judgment. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

## II. Facts for Summary Judgment

The facts relevant to Defendant's summary judgment motion, viewed in the light most favorable to Plaintiff as the nonmovant, are few and largely uncontested. Plaintiff seeks to replevy promissory notes that Plaintiff acquired in October 2010 from one Dawood Ghadami, an Iranian citizen, while in Iran. [Dkt. 1; Dkt. 76-1 ¶¶ 2-4.] At the time, Plaintiff held a "green card," making him a permanent legal resident of the United States. [Dkt. 60-1 at 2; Dkt. 76-1 ¶ 5.]

Plaintiff sold his interest in a factory to Ghadami for two billion Rials. [Dkt. 60-1 at 4-6.] Plaintiff then combined the proceeds from the sale of the factory with 1.1 billion Rials belonging to Plaintiff's brother. [*Id.*] Plaintiff transferred the 3.1 billion Rials[2] to Ghadami "to invest in Iran" in exchange for promissory notes with principal amounts of two billion and 1.1 billion Rials. [Dkt. 60-1 at 4-8; Dkt. 73-1 ¶¶ 4-6.] The notes were due to mature after five years at twenty-three percent annual interest.[3] [Dkt. 60-1 at 4-8; Dkt. 73-1 ¶¶ 4-6.] Plaintiff brought the

---

[2] At today's exchange rate, 3.1 billion Rials is worth approximately 95,500 U.S. dollars. The Iranian Rial has depreciated considerably since Plaintiff's transaction. *See Iran's Rial at All-time Low Over Strong Dollar, Other Woes* (Dec. 27, 2016), http://www.cnbc.com/2016/12/27/irans-rial-at-all-time-low-over-strong-dollar-other-woes.html.

[3] Whether Plaintiff loaned money to or invested money with Ghadami is the only ascertainable dispute of fact raised in Plaintiff's brief, which did not include a Statement of Material Facts in Dispute as required by Local Rule 56-1(b). Plaintiff does not contradict, distinguish, refute, or even acknowledge Defendant's evidence, but instead proffers an affidavit in which Plaintiff generally avers that he made no investment or loan in his transactions with Ghadami. [Dkt. 76-1 ¶ 8 ("I did not make any investment into the factory . . . ."); *id.* ¶ 12 ("I did not make a loan or give any credit to Mr. Ghadami . . . .").] "[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment. Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of truth of the matter asserted." *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004) (internal quotations omitted). Plaintiff fails to point to a single specific fact to support his position or to contradict

notes with him when he moved to the United States and left them with another brother for safekeeping. [*See* Dkt. 60-1 at 9-11.] Plaintiff alleges that Defendant stole the notes from Plaintiff's brother and filed this lawsuit, seeking return of the notes or damages for their value. [Dkt. 1.][4]

### III. Discussion

Defendant contends that 31 C.F.R. § 560.207, a regulation prohibiting investments in Iran, precludes Plaintiff's claims as a matter of law. In response, Plaintiff argues that section 560.207 does not apply to his transactions in Iran and even if it did apply it would have no impact on his lawsuit.

The applicability of the regulation is a threshold issue; if it does not apply to Plaintiff's transaction with Ghadami, it can have no impact on Plaintiff's lawsuit. The Court thus begins with this issue before turning to the relationship between part 560 and the relief Plaintiff seeks.

---

Defendant's. Plaintiff's bald averments, to the extent they may even be characterized as factual assertions instead of legal characterizations of Plaintiff's dealings with Ghadami, therefore fail to create a genuine issue of fact.

Moreover, Plaintiff's new affidavit blatantly contradicts both Plaintiff's prior sworn deposition testimony [Dkt. 60-1 at 4-8 (describing how Plaintiff gave Ghadami cash in exchange for interest-accruing notes] and prior sworn affidavit (**cited to the Court by Plaintiff** in conjunction with one of his motions for summary judgment) [Dkt. 73-1 ¶¶ 4-6 (describing interest-accruing promissory notes)]; *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). And Plaintiff provides no "plausible explanation for the contradictions." *Moro v. Shell Oil Co.*, 91 F.3d 872, 875 (7th Cir. 1996). The utter lack of discussion of the evidence identified by Defendant coupled with the conclusory and contradictory nature of Plaintiff's new affidavit yields only one reasonable inference: "that the affidavit was a sham designed to thwart the purposes of summary judgment." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015). Thus, the Court disregards the portions of Plaintiff's new affidavit which seek to contradict his prior affidavit and sworn testimony.

[4] The Court previously dismissed Plaintiff's claims under the Indiana Crime Victim's Relief Act as barred by the statute of limitations. [Dkt. 12.]

## A. Applicability of 31 C.F.R. § 560.207

31 C.F.R. § 560.207, promulgated pursuant to the International Emergencies Economic Powers Act, 50 U.S.C. §§ 1701-06, provides as follows: "Except as otherwise authorized pursuant to this part, and notwithstanding any contract entered into or any license or permit granted prior to May 7, 1995, any new investment by a United States person in Iran or in property (including entities) owned or controlled by the Government of Iran is prohibited." 31 C.F.R. § 560.207.

As Defendant's argument goes, Plaintiff's loan to Ghadami constitutes an investment in Iran. Thus, section 560.207 "prohibited" Plaintiff's transaction with Ghadami. In response, Plaintiff provides several arguments for why the regulation does not apply. First, he argues that his transaction with Ghadami was not a "new investment." Second, he argues that he was not a "United States Person." Third, he argues that his transaction does not qualify because it did not involve property owned by the Iranian government. The Court addresses each of these contentions in turn.

### 1. New Investment

First, relying wholly upon assorted online dictionaries, Plaintiff maintains that his transaction with Ghadami does not constitute a "new investment." In reply, Defendant points out that the term is defined at 31 C.F.R. §§ 560.316 to .317, thus negating any need to refer to such secondary sources. Defendant maintains that, as defined in part 560, Plaintiff's transaction with Ghadami was a "new investment."

Section 316 defines a "new investment" as "a transaction after 12:01 Eastern Daylight Time, May 7, 1995, that constitutes: (a) A commitment or contribution of funds or other assets; or (b) A loan or other extension of credit, as defined in § 560.317." 31 C.F.R. § 560.316.

4

Section 317 in turn defines "loan": "The term credits or loans means any transfer or extension of funds or credit on a basis of an obligation to repay, or any assumption or guarantee of the obligation of another to repay an extension of funds or credit . . . ." *Id.* § 560.317.

The undisputed evidence demonstrates that Plaintiff transferred 3.1 billion Rials to Ghadami in exchange for two promissory notes due to mature after five years at twenty-three percent annual interest. Thus, Plaintiff provided Ghadami "funds or credit on a basis of an obligation to repay" the principal plus interest. This transaction occurred in 2010, which is after May 7, 1995. Accordingly, Plaintiff's transaction with Ghadami constitutes a "new investment" under 31 C.F.R. § 560.207.

### 2. United States Person

Second, Plaintiff argues that although he possessed a green card at the time of his transaction with Ghadami, he was not a "United States person" because he had not taken up residency in the United States at that time. Again, Plaintiff cites only to secondary sources in support of his argument. In reply, Defendant points out that § 560.314 has no such residency requirement.

Plaintiff's argument is a bit difficult to track. Plaintiff on the one hand appears to argue that the right to take up permanent residency does not make Plaintiff a permanent resident alien, and thus not a U.S. person. On the other hand, Plaintiff seems to suggest that even if he is a permanent resident alien, such does not automatically make him a U.S. person under the regulations. Either way, Plaintiff's argument is wholly frivolous.

31 C.F.R. § 560.314 provides: "The term United States person or U.S. person means any United States citizen, permanent resident alien, entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches), or any person in

5

the United States." Permanent residency is a status, and one that is not transitory based upon where its holder resides at a given moment. *See* 8 U.S.C. § 1101 ("The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the **privilege** of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." (emphasis added)).[5]

Plaintiff admits that, "[b]y holding a green card, [he] had the right to take up permanent residency in the United States at the time of the transaction . . . ." [Dkt. 76 at 5.] Plaintiff was therefore a permanent resident alien at the time of his transaction with Ghadami. All "permanent resident aliens" are United States persons under section 314. Accordingly, Plaintiff was a United States person during his transaction with Ghadami.

### 3. Investment in Iran

Finally, Plaintiff argues that § 560.207 does not apply because his transaction with Ghadami did not involve the Iranian government. Defendant argues that § 560.207 is not so limited.

Section 560.207 is phrased in the disjunctive, prohibiting new investments "in Iran **or** in property (including entities) owned or controlled by the Government of Iran." 31 C.F.R. § 560.207 (emphasis added). "Iran," in turn, is defined broadly as "the territory of Iran and any other territory or marine area, including the exclusive economic zone and continental shelf, over which the Government of Iran claims sovereignty, sovereign rights, or jurisdiction." *Id.* § 560.303. These provisions are designed to prohibit a United States person from "provid[ing] funds to the Iranian economy." *Bassidji v. Goe*, 413 F.3d 928, 939 (9th Cir. 2005).

---

[5] Plaintiff does not argue that he had abandoned his permanent resident status—and abandonment is a term of art in immigration law—at the time of the transaction. *Cf., e.g.*, *Aleem v. Perryman*, 114 F.3d 672 (7th Cir. 1997).

6

Plaintiff's argument again is frivolous. Section 560.207 prohibits investments in Iran as well as investments in the Iranian government. Plaintiff extended a loan to Ghadami, an Iranian citizen located in Iran, which loan constitutes an investment. Thus, the Court concludes that Plaintiff's transaction with Ghadami was prohibited by § 560.207.

**B. Relationship Between Part 560 and Plaintiff's Lawsuit**

The undisputed evidence conclusively demonstrates that Plaintiff's transaction with Ghadami was prohibited by the International Emergencies Economic Powers Act as implemented by 31 C.F.R. part 560. But what effect does the illegality of Plaintiff's transaction have on the availability of a remedy in this lawsuit?

Defendant maintains that it precludes Plaintiff's lawsuit. In response, Plaintiff distinguishes his claims from a lawsuit to enforce such an illegal contract.

Plaintiff's claims each seek compensation for the inability to enforce the promissory notes. A replevin action is a "speedy statutory remedy designed to allow one to recover possession of property wrongfully held." *United Farm Family Mut. Ins. Co. v. Michalski*, 814 N.E.2d 1060, 1066 (Ind. Ct. App. 2004). As codified under Indiana law, replevin requires establishing three elements: title or right to possession, unlawful detention, and the defendant's wrongful possession. *Alkhalidi v. Ind. Dep't of Correction*, 42 N.E.3d 562, 566 (Ind. Ct. App. 2015); Ind. Code § 32-35-2-1. A successful plaintiff may recover "(1) the delivery of the property, or the value of the property in case delivery is not possible; and (2) damages for the detention of the property." Ind. Code § 32-35-2-33; *see, e.g.*, *United Farm Family*, 814 N.E.2d at 1066 (trial court awarded plaintiff "an amount for the value of" a boat and "damages for lost rents resulting from [defendant's] detention thereof"; court of appeals reversed judgment on grounds unrelated to relief awarded). "The plaintiff must prove his right to possession on the

7

strength of his own title, not merely the weakness of the defendant's title or right to possession." *United Farm Family*, 814 N.E.2d at 1067-68 (citing *Tucker v. Capital City Riggers*, 437 N.E.2d 1048, 1051 (Ind. Ct. App. 1982)). Trespass to chattels requires the plaintiff to prove that "(1) Defendant dispossessed Plaintiff of his property; (2) Defendant impaired the property's condition, quality or value; (3) Defendant deprived Plaintiff of the use of the property for a substantial time; or (4) Defendant harmed some other thing in which Plaintiff had a legally protected interest." [Dkt. 15 at 5 (citing *Coleman v. Vukovich*, 825 N.E.2d 397, 407 (Ind. Ct. App. 2005)).]

31 C.F.R. part 560 is part of a passel of sanctions levied against Iran pursuant to the International Emergencies Economic Powers Act, 50 U.S.C. §§ 1701-06, or IEEPA. IEEPA grants the President of the United States the authority to "deal with any unusual and extraordinary threat . . . to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a). Presidents dating back to President Carter have invoked this authority to prevent American assets from benefitting unscrupulous foreign nations. *See United States v. Anvari-Hamedani*, 378 F. Supp. 2d 821, 827 (N.D. Ohio 2005) (describing history of IEEPA). IEEPA provides for civil and criminal penalties for violations of orders and regulations lawfully promulgated thereunder, 50 U.S.C. § 1705, and proceeds obtained in violation of IEEPA may be subject to civil forfeiture. *In re 650 Fifth Avenue and Related Properties*, 830 F.3d 66, 87 (2d Cir. 2016) ("[P]roperty that 'constitutes or is derived from proceeds traceable to' violations of executive orders and ITRs promulgated pursuant to the IEEPA is subject to forfeiture." (quoting 18 U.S.C. § 981(a)(1)(C)).

Part 560 implements President Clinton's Executive Order 13,059, which was issued in 1997 pursuant to IEEPA "to deal with the unusual and extraordinary threat" posed by the

"actions and policies of the Government of Iran." Exec. Order No. 13,059, 62 Fed. Reg. 44,531 (Aug. 19, 1997). Executive Order 13,059 prohibits, *inter alia*, "any new investment by a United States person in Iran or in property, including entities, owned or controlled by the Government of Iran." *Id.* § 2(c). As one court observed, "the prohibition against investment goes to the heart of the economic sanctions regime. Investment in Iran directly aids the Iranian economy." *Bassidji*, 413 F.3d at 935. Along with concomitant prohibitions on importation and other economic activities with Iran, the prohibition on investing in Iran's economy principally seeks to dissuade Iranian support of terrorism. *See United States v. Hassanzadeh*, 271 F.3d 574, 579-80 (4th Cir. 2001).

The first consequence of § 560.207 is that Plaintiff could not enforce the promissory notes vis-à-vis Ghadami. *See Bassidji*, 413 F.3d at 939-40 (holding that party could not enforce contract made in violation of part 560); *see also, e.g.*, *United States v. Miss. Valley Generating Co.*, 364 U.S. 520 (1961) (holding that contractor could not enforce government contract made in violation of federal conflict of interest laws). The corollary to this consequence is that the promissory notes are valueless. Because the holder of the notes could not recover a dime on the contracts, Plaintiff cannot recover any damages for the alleged trespass or under Indiana Code § 32-35-2-33(2).[6]

The second and dispositive consequence of Plaintiff's violation of part 560 is that the remedy Plaintiff seeks is itself illegal. This is true notwithstanding the fact that Plaintiff's suit

---

[6] Plaintiff does not meaningfully contest this point, except for the already-rejected arguments that the regulation does not apply. Accordingly, given the Court's holding that Plaintiff's investment was illegal under IEEPA and part 560, any argument that the promissory notes still retain value or that Plaintiff is entitled to damages has been waived. *See, e.g.*, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466-67 (7th Cir. 2010).

9

does not seek to enforce the promissory notes, but instead to recover either the notes themselves or damages for their taking. The "ordinary rule," long recognized in American jurisprudence, is that "an act done in disobedience to the law creates no right of action which a court of justice will enforce." *Miller v. Ammon*, 145 U.S. 421, 427 (1892). Under this axiomatic precept, the critical distinction is not between actions on a contract and actions to recover a reified contract as Plaintiff suggests, but between lawsuits that do not request illegal relief and those that would "demand conduct that is inherently contrary to public policy." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 79 (1982); *Kelly v. Kosgua*, 358 U.S. 516, 520-21 (1959) (concluding that courts may not "enforc[e] the precise conduct made unlawful" by an act of Congress); *Bassidji*, 413 F.3d at 936 (noting that the relevant difference under *Kaiser Steel* is "between cases in which the courts are asked to order an illegal act and cases in which the relief sought does not seek directly to order illegal activity").

Part 560 prohibits "[a]ny transaction on or after the effective date that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the prohibitions set forth in this part . . . ." 31 C.F.R. § 560.203. Sections 207 and 543 in turn prohibit new investments in Iran in general, *id.* § 560.207, and "[t]he re-investment in Iran of the proceeds from . . . real property sales" in particular, *id.* § 560.543(b)(2).

While not an action on the contract, Plaintiff lawsuit asks the Court to either deliver to him the means for extracting proceeds from an illegal investment or to order damages in recognition of his right to those proceeds. Either result would allow Plaintiff to use this Court to evade the prohibition on investing and achieve a return on his illegal investment. 31 C.F.R. § 560.203 expressly prohibits any such attempt to evade or avoid the other prohibitions

10

enumerated throughout part 560.[7]  Simply put, Plaintiff may not invoke the power of the Court to obtain any recovery based upon an entitlement to the fruits of his illegal transaction because the recovery itself would further violate the law.

As the Second Circuit has observed,

> [T]o reform the actions of the government of Iran, Executive Order 12,959 and the [regulations] adopt a blunt instrument: broad economic sanctions intended to isolate Iran. *See* [*United States v. Homa Int'l Trading Corp.*, 387 F.3d 144, 146 (2d Cir. 2004)] ("'[T]he obvious purpose of [Executive Order 12,959] is to isolate Iran from trade with the United States.'" (quoting *United States v. Ehsan*, 163 F.3d 855, 859 (4th Cir.1998))).

*United Staets v. Banki*, 685 F.3d 99, 108 (2d Cir. 2012).  The deterrent effect of part 560 and IEEPA would be magnificently dulled if Plaintiff, having engaged in transactions that run afoul of the regulations, could nonetheless turn to the courts as a conduit to realizing his ill-gotten gains.  Thus, the Court concludes that Plaintiff's lawsuit seeks an illegal remedy, such that it must fail as a matter of law.

## IV.  Conclusion

The Court concludes that federal law prohibits Plaintiff from replevying or receiving damages relating to the promissory notes received in exchange for his illegal investment in Iran.  Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment.  [Dkt. 58.]  The

---

[7] The fact that the Court cannot order the relief Plaintiff seeks without running afoul of federal law distinguishes this case from cases where a defendant, not party to the illegal contract, seeks to assert an illegality of contract defense in an effort to obtain an unwarranted windfall.  Compare this case, for example, with *Matta v. Katsoulas*, 212 N.W. 261 (Wis. 1927), where the court held that the defendant, who won a car in a drawing with a ticket belonging to the plaintiff and then wrongfully kept the car, could not defend itself by claiming that the underlying transaction was an illegal lottery.  Ordering the transfer of the car would not effect a violation of the gambling statute or indeed of any other public policy or law.  By contrast, ordering the transfer of the promissory notes in this case would in fact be a further violation of federal law—namely, it would facilitate a transaction that attempts to avoid or evade the prohibitions on investing in Iran.  Moreover, any concerns that this result would confer a windfall upon Defendant would be misplaced because Defendant, just like Plaintiff, could not enforce the illegal promissory notes if in fact she possesses them as alleged.

Court also **DENIES AS MOOT** Plaintiff's pending motions for partial summary judgment [Dkt. 31; Dkt. 73]. Final judgment shall issue accordingly.

SO ORDERED.

Dated: 13 APR 2017

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.